MAYNARD HAMBLIN *v.* STATE.

(*Knoxville.* September Term, 1912.)

1. CRIMINAL LAW. No reversal for failure of minutes to show that special judge elected by bar was in attendance, nor for failure of clerk to sign such minute entry, when.

Where the record showed that the regular judge was incompetent, because, as attorney-general before his election as judge, he signed the indictment charging the accused with crime, and that, on account of his such technical incompetency, he vacated the bench, whereupon the clerk of the court opened and held an election at which the members of the bar, present and resident of the State, voted, and that a certain person was, by a majority vote of such attorneys, elected special judge to preside at the trial of the case, the verification of the minute entry as to such election, made by the signature of the regular judge instead of that of the clerk of the court, and the failure of such entry to recite that the attorney so elected as special judge was in attendance on the court at the time of his election, were mere irregularities, not affecting the substantial rights of the accused, constitute no ground for reversal, and must be disregarded under our statutes, especially where neither the validity nor regularity of the election was questioned in the trial court, as in any way affecting the fairness and impartiality of the trial.

Code cited and contrued: Sec. 6351 (S); sec. 5268 (M. & V.); sec. 4516 (T. & S. and 1858).

Acts cited and contrued: Acts 1911, ch. 32.

Cases cited and approved: Wilson v. State, 109 Tenn., 167; Harness v. State, 126 Tenn., 365, 368, 369, explaining and limiting Low v. State, 111 Tenn., 81, to its facts.

Hamblin v. State.

2. SAME. No reversal for technical errors not affecting the merits, where no substantial right was violated.

No reversal will be made in any case for technical errors not affecting the merits, unless some substantial right of the accused guaranteed to him by the statutes or the constitution was violated; for the supreme court will not permit an offender to escape through mere irregularities and technicalities, nor even through errors which it can see have not operated to the prejudice and hurt of the defendant. (*Post, pp.* 399, 400.)

Code cited and construed: Sec. 6351 (S); sec. 5268 (M. & V.); sec. 4516 (T. & S. and 1858).

Cases cited and approved: Wilson v. State, 109 Tenn., 167; Harness v. State, 126 Tenn., 365.

3. SAME. Innocent shall not suffer for want of a fair trial, nor shall guilty escape through mere irregularities or technicalities.

While it is the duty of the supreme court to see that no innocent defendant shall suffer for want of a fair trial, it is also its duty at the same time to see that no guilty defendant shall escape through a mere irregularity or technicality which does not and cannot affect the merits, which, in every criminal case, is the guilt or innocence of the accused. (*Post, p.* 400.)

Code cited and construed: Sec. 6351 (S.); sec. 5268 (M. & V.); sec. 4516 (T. & S. and 1858).

Case cited and approved: Wilson v. State, 109 Tenn., 167.

4. SAME. Statute forbidding reversals except for errors affecting result must be given effect, except where it invades constitutional rights.

The statute (Acts 1911, ch. 32), forbidding the supreme court's reversal of any case, criminal or civil, for any error in the proceedings below, unless it is made affirmatively to appear that the errors complained of affected the result, must be given effect, unless it invades some constitutional right of the accused. (*Post, p.* 400.)

Hamblin v. State.

Acts cited and construed: Acts 1911, ch. 32.

Case cited and approved: Harness v. State, 126 Tenn., 365.

FROM CLAIBORNE.

Appeal from the Circuit Court of Claiborne County. —P. G. FULKERSON, Special Judge.

MONTGOMERY & MONTGOMERY and JOHN P. DAVIS, for Hamblin.

ASSISTANT ATTORNEY-GENERAL FAW, for State.

MR. JUSTICE LANSDEN delivered the opinion of the Court.

Plaintiff in error was indicted and convicted of murder in the second degree, and sentenced to twenty years in the penitentiary, for the murder of one Arthur Johnson.

The facts established upon the record by a clear preponderance of the testimony that plaintiff in error and the deceased met at the store of one Evans in Clairfield and engaged in a game of craps. Hamblin won $4 from Johnson, and at Johnson's request they played again, and Johnson won $4 from Hamblin. Johnson started away, and it was then proposed by one or the other that they shoot again for $20. This was agreed to, and the money was placed upon the floor, and Hamblin shot the

dice.  Johnson said, "You have crapped out," and picked
up the money, and went out of the store.  Soon after-
wards Hamblin took a bottle of whisky out of his pocket
and took a drink, and drew his revolver and exhibited
it to Evans, the proprietor of the store, and remarked
that he could shoot Johnson, who was wearing a red
sweater, in the back, and the blood would not make a
stain.  Before leaving Evans' store, he said that if
Johnson did not return his money that he would kill
him, applying vile and offensive epithets at the time.
Johnson, upon leaving Evans' store, proceeded in the
direction of the railroad, and a witness for the State,
who was present at Evans' store and heard what Ham-
blin said, went to Johnson and told him of Hamblin's
threats, and advised him to leave.  Johnson went into
Jones' store, which was situated near the railroad track.
When Hamblin came out of Evans' store, he was seen
to look about in different directions as if trying to
locate some one, and proceeded towards the railroad
and Jones' store.  He stepped up in front of the door
of Jones' store, and drew his pistol and pointed it at
the deceased.  A witness for the State called to him
and said, "Don't do that, you fool," whereupon Ham-
blin raised his pistol, looked at the witness, then looked
back in the store, presented his pistol, and fired three
times.  Johnson rushed to the front of the store and
threw his arms around the arms of Hamblin, and in
the struggle Hamblin freed his pistol arm from the
grasp of Johnson, and raised his pistol above Johnson's

head and fired. Johnson sank down and died immediately.

He had two wounds in the breast and one wound in the head. When Hamblin first appeared in the front of Jones' store, he stated to Johnson that if he did not return him his money that he would kill him, applying divers and sundry vile epithets. Johnson was unarmed, and had made no demonstrations towards Hamblin at the time of the first shot.

The case was decided at a former day, and the facts found by the court were announced in substances as above stated. We have been presented with a petition to rehear by counsel for plaintiff in error, but the correctness of the facts stated is not assailed by the petition. A rehearing is asked alone upon two questions presented in the argument, to the effect that the special judge who was elected to preside at the trial is not shown by the order on the minutes showing his election to have been in attendance upon the court at the time of the election, and also that the order showing the election of the special judge is not signed by the clerk of the court. No question was made in the court below challenging either the validity or the regularity of the election of the special judge. There is no complaint made to the conduct of the special judge while presiding at the trial, and no suggestion that in fact he does not possess every qualification required by the constitution and the laws.

There is no suggestion that he was not in fact elected, and that he was not in fact present and in attendance

upon the court at the time of his election.   The point
urged is that the minute order is not signed by the clerk,
and does not recite that the special judge was in at-
tendance upon the court.   The record shows that the
regular judge, Hon Dana Harmon, was present, but
was incompetent, because he signed the indictment
of the plaintiff in error as attorney-general before his
election as judge, and because of his technical incom-
petency he vacated the bench, and the clerk opened and
held, an election by the members of the bar voting who
were present and residents of the State and not inter-
ested in the trial of the case.   P. G. Fulkerson, "having
all the qualifications of a regular judge, was elected by
a majority of all the attorneys present and members
of the bar and residents of the State" to preside at
the trial of this case.   This minute order is verified by
the signature of the regular judge.

The petition to rehear admits in effect the guilt of
the plaintiff in error, but insists that a reversal should
be had for the irregularities stated.

In the case of *Harness* v. *State,* 126 Tenn., 365, 149 S.
W., 911, decided at this term, the case of *Low* v. *State,*
111 Tenn., 81,78 S.W., 110, was explained and limited  to
its facts; the court holding that the failure of a special
judge to take the oath against dueling was not ground
for reversal.   It was stated in that case, in substance,
that no reversal would be had in any case for tech-
nical errors not affecting the merits, unless some sub-
stantial right of the accused guaranteed to him by
the statutes or the constitution was violated.   This is

in accord with the previous holdings of this court, and especially in accord with *Wilson* v. *State,* 109 Tenn., 167, 70 S. W., 57, in which it was said that this court will not "permit an offender to escape through mere irregularities and technicalities, nor even through errors which it can see have not operated to the prejudice and hurt of the defendant."

While this court will see that no innocent defendant shall suffer for want of a fair trial, it is its duty at the same time to see that no guilty one shall escape through a mere irregularity or technicality which does not and cannot affect the merits. In every criminal case the merits is the guilt or innocence of the accused. *Wilson* v. *State,* supra. The rule announced in that case was predicated upon section 6351 of Shannon's Code, forbidding a reversal by this court of any judgment, decision, or decree of an inferior court, except for errors which affect the merits.

The case of *Harness* v. *State* is based, not only upon the previous decisions of this court in accord with *Wilson* v. *State,* but under chapter 32, Acts of 1911, which forbids reversal by this court of any case, criminal or civil, for any error in the proceedings below, unless it is made to affirmatively appear that the errors complained of affected the result. We have said in numerous cases, both written and oral, that this statute must be given effect, unless it invades some constitutional right of the accused.

If the record of the election and qualification of the learned special judge recites the truth, it is manifestly

Hamblin v. State.

immaterial whether this record be signed by the clerk of the court, or the judge of the court, or not signed at all.    If there had been such defect in the election and qualification of the special judge as to have prejudiced the plaintiff in error, or to have affected his right to a fair and impartial trial, the question should have been, and, of course, would have been, made below.    It is bootless to reserve questions of mere technicality for this court.    They will not be permitted to defeat the ends of justice.    There is no merit in the petition, and it is dismissed.